**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| TONYA MCLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No.  04-1274-MLB |
| | ) | |
| SOMNOGRRAPH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM DECISION**

**I.   INTRODUCTION**

This is an action under the Fair Labor Standards Act (FLSA) and Kansas Wage Payment Act to recover overtime pay.  Plaintiff and nine other claimants seek overtime pay for the hours worked for defendant in excess of forty hours a week.  Defendant stipulates that overtime payment is due; however, the parties disagree as to the amount of overtime and liquidated damages.

The case was tried to the court, and this decision represents the court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52.

**II.  FINDINGS OF FACT**

Defendant operates a business that performs five different types of sleep studies on patients.  The claimants were all employed by defendant as sleep technicians.  Tonya McLaughlin, the original claimant, was employed by defendant from March 6, 2002, until June 10, 2004.  Three additional claimants filed their consents to join the suit on November 29, 2004: Kenny Claar was employed from June 5, 2001, until July 17, 2002; Jeff Crown was employed from August 14, 1999,

until October 28, 2004; and Nicholas Rhodes was employed from June 7, 2000, until March 21, 2002. Jeremiah C. Johnson filed his consent on December 20, 2004, and was employed from August 21, 2001, until July 15, 2004. Dwight Pike filed his consent on January 6, 2005, and was employed from February 11, 2003, until February 17, 2004. Chris Stewart filed his consent on June 3, 2005, and was employed from December 3, 2001, until February 2002. Dawn Marie Hosmer filed her consent on June 17, 2005, and was employed from May 16, 2001, until November 19, 2003. Krista Attar filed her consent on July 1, 2005 and was employed from January 22, 2002, until May 4, 2005. Bryan Dyer filed his consent on July 15, 2005, and was employed from August 4, 2003, until April 6, 2005.

The studies completed by the claimants were performed utilizing machines that monitored the patients through wires connected to the patients during hours of sleep. The claimants performed these studies at different facilities or, on occasion, at defendant's headquarters. For obvious reasons, the studies were performed during the night. In Wichita, the claimants generally arrived at the test facility around 7 p.m. but, on numerous occasions, claimants traveled to neighboring cities to perform a study. Claimants, however, were only paid a per diem for each study. If a claimant was required to travel in excess of four hours each way, the claimant was given an additional per diem for that travel. Travel less than eight hours round-trip was not reimbursed. In Wichita, claimants generally used their own cars. When completing a study outside of the city of Wichita, claimants customarily used company cars. In some cases, claimants traveled by air to the city where the studies were conducted.

For test studies in the Wichita area, a typical day for each claimant began with a phone call to the office at three o'clock to verify the study that was scheduled for the evening. Then, the claimant was required to arrive at defendant's office thirty minutes prior to the required departure time for the facility to which he or she was assigned. Upon arrival at defendant's office, the claimant would sign in at the front desk and clock in utilizing a punch card. During that thirty minutes in the office, the claimant would check out one or two machines, depending on the number of studies being performed, and check out a vehicle if necessary. The claimant was required to check out a machine, with the exception of the VA Hospital, even if the facility had a machine on location. This was a requirement since the claimant needed to have a back-up in the event of machine failure. All of these items were signed out with the date and time noted on the form. Once the claimant was ready to depart, an Administrator on Call (AOD) would check the claimant's vehicle and machines. The claimant would then travel to the facility.

At the facility, the claimant would set up the machines necessary to complete the study. Once the patient arrived, usually around eight o'clock, the claimant would complete an 89-question patient survey, if required, and then attach 22 different wires to the patient. The patient was required to go to sleep no later than eleven o'clock. During the study, the claimant monitored the machines. In the morning, the claimant would wake an adult patient at six o'clock, in the city, and at five o'clock, outside of the city. A child patient could not be awoken until seven o'clock. After waking the patient, the claimant would remove the wires from the patient, assist the

patient in cleaning up, answer any questions and then break down the machine. The claimant then had to travel back to the office in order to download the data from the machine. Depending on the amount of travel, claimants testified that they worked anywhere from ten to sixteen hour days.

Claimants, for the most part, did not keep records of the hours they worked. Instead, claimants calculated the overtime based on a copy of the work schedules provided to claimants by defendant during discovery. The schedules, which were prepared usually a week in advance, noted the number of patients and the location of the facility where claimants would work. The claimants based their calculations on the amount of time worked on a normal day for each facility. Both Dawn Hosmer and Tonya McLaughlin, whom the court found to be credible witnesses, testified that the schedules provided by defendant were accurate. The records from defendant's time clock were never entered into evidence.

Lars Stamp, general counsel for defendant, was employed from May 1999 to May 2000. Stamp reported directly to Duke Naipohn, the Chief Executive Officer of defendant. Stamp had discussions with Naipohn about his concerns that the employees were not paid overtime and defendant did not fall into an exemption of the FLSA. Naipohn testified that he told Stamp to come up with a solution for the problem. Naipohn also testified that he called the Department of Labor after speaking with Stamp. Naipohn, however, had no recollection of who he spoke with other than it was a person who "handled these problems," nor did Naipohn state when he contacted the Department of Labor.

Gregory Rodman, former Chief Financial Officer of defendant, testified that he completed the payroll in conjunction with Dunning and Dunning, an accounting firm. To complete payroll, Rodman viewed the employee schedules and time records. Rodman noted that the employees would always exceed forty hours in a week and consistently worked ten to fourteen hour days. In March or April of 2001, Rodman had a discussion with Naipohn regarding the sleep technician pay rate. Rodman was concerned that the employees were not receiving overtime and, in addition, that the pay rate might be below minimum wage. Naipohn was agitated when Rodman discussed this issue and told Rodman to leave it alone because Naipohn had already talked to someone.

In October 2001, while working on an employee handbook, Rodman again voiced his concerns to Naipohn. Naipohn told Rodman to leave it alone and that Rodman was barking up the wrong tree. Rodman voiced the same concerns to Naipohn for a third and fourth time in April and August 2003. On these occasions, in addition to the previous concerns, Rodman told Naipohn that the employee hours were a safety concern due to the amount of travel the employees completed. Rodman was again told that the issue had been researched and it was not a concern.

In October 2002, Tom Vrana, an outside consultant, spoke with Rodman about his concerns that defendant might be in violation of the FLSA unless it fell within one of the exceptions. Vrana was concerned since most of the employees worked more than forty hours a week. In December 2002, Vrana expressed his concerns to Bob Taylor, a management level employee of defendant.

Also, various claimants testified that they approached Bob

Hendrickson, Clinical Director for defendant, regarding overtime pay. Claimants were informed that they only received the per diem rate.

Additional facts will be noted in the following section for purposes of clarity.

### III. ANALYSIS AND CONCLUSIONS OF LAW

#### A. Applicable Statute of Limitations

Under the FLSA, a claimant must bring suit within two years for overtime pay or three years if the claimant has alleged a willful violation. 29 U.S.C. § 255(a). To determine the date on which a claimant brought the action, the date on which the complaint was filed is considered the date of commencement if the claimant is named as a party plaintiff. 29 U.S.C. § 256. If a claimant is not named as a party plaintiff at the time the complaint was filed, the date the claimant signed a written consent operates as the date of commencement for that particular claimant. Id.

Defendant asserts that the applicable statute of limitations in this case is two years. Claimants, however, respond that defendant has waived this defense by failing to preserve it in the pretrial order. The Tenth Circuit has established that section 255(a) is intended as a limitation on the remedy available and "must be pleaded as an affirmative defense in accordance with the requirements of Fed. R. Civ.P. 8(c)." Hodgson v. Humphries, 454 F.2d 1279, 1283-84 (10th Cir. 1972). Defendant has not raised section 255(a) as an affirmative defense in the pretrial order. See Pretrial Order at 5. Accordingly, the court finds that the statute of limitations for the violation of the FLSA is three years from the date that the complaint was filed or

the consent was signed.[1]

Accordingly, the court finds that the following time periods will be considered for each claimant:[2]

    Krista Attar:        7/1/2002 - 7/1/2005

    Kenny Claar:        11/29/2001 - 11/29/2004

    Jeff Crown:         11/29/2001 - 11/29/2004

    Bryan Dyer:         7/15/2005 - 7/15/2005

    Dawn Hosmer:        6/17/2002 - 6/17/2005

    Jeremiah Johnson:    12/20/2001 - 12/20/2004

    Tonya McLaughlin:    11/29/2001 - 11/29/2004

    Dwight Pike:        1/6/2002 - 1/6/2005

    Nicholas Rhodes:     11/29/2001 - 11/29/2004

    Chris Steward:      6/3/2002 - 6/3/2005

Since Chris Steward is claiming overtime pay for hours worked between December 2001 and February 2002, the court finds that his claim for overtime is barred by the statute of limitations. Krista Attar, Kenny Claar, Dawn Hosmer, Jeremiah Johnson and Nicholas Rhodes have also sought overtime pay for periods barred by the statute of limitations. The court will determine the amount of damages for these

---

[1] Regardless of defendant's waiver of this defense, the court would have determined that defendant's actions were willful. The court has determined, infra at p. 14-16, that defendant is liable for liquidated damages. The same willfulness standard for the statute of limitations issue applies to the liquidated damages issue. Brinkman v. Dept. of Corrections of State of Kan., 21 F.3d 370, 373 (10th Cir. 1994).

[2] For simplicity, the court has listed the entire three year period that each claimant could potentially recover overtime pay. However, each claimant may not have been employed by defendant during that entire period, so his or her overtime has been determined separately.

-7-

claimants excluding the time barred by the statute of limitations.

**B.   Actual Damages**

In order to determine the amount of overtime owed, the court must consider the amount of hours worked by the claimants. The term "work" is not defined in the FLSA, but it is settled that duties performed by an employee before and after scheduled hours, even if not requested, must be compensated if the employer "knows or has reason to believe" the employee is continuing to work, 29 C.F.R. § 785.11, and the duties are an "integral and indispensable part" of the employee's principal work activity. Steiner v. Mitchell, 350 U.S. 247, 256, 76 S. Ct. 330, 100 L. Ed. 267 (1956); 29 C.F.R. §§ 785.24 and 785.25.

In estimating the amount of time worked, the claimants reviewed the schedules provided by defendant. Defendant asserts that this method was unreliable since the schedules may not be 100% accurate due to the lack of a date on certain pages and the difference of format from an older year. Defendant, however, provided the schedules to claimants without noting that they might be inaccurate. "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [29 U.S.C. § 211(c)]." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S.Ct. 1187, 90 L. Ed. 1515 (1946); Metzler v. IBP, Inc., 127 F.3d 959, 965-66 (10th Cir. 1997).

"When the employer has failed to record compensable time and the employees have proved that they actually performed the work in question, the plaintiffs need only produce evidence sufficient to

-8-

support a reasonable inference of the amount and extent of that work." Metzler, 127 F.3d at 965 (citing Mt. Clemens, 328 U.S. at 687, 66 S.Ct. at 1192). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. at 965-66 (quoting Mt. Clemens, 328 U.S. at 687-88, 66 S.Ct. at 1192-93).

Claimants relied on the schedules to estimate the amount of time spent working each day. All ten claimants essentially agreed on the amount of time they worked at a given location. The claimants, on average, estimated that they spent 10-14 hours at a facility. The variation in hours was accounted for by numerous factors: the number of patients; whether the facility had working equipment; whether the person was in training or training a new technician; and the required wake up times for that facility. Rodman, the accountant who prepared the payroll, testified that the claimants typically worked ten to fourteen hour days. Naipohn also testified that their day varied from ten to twelve hours. The court finds that the claimants have proven that they worked the amount of hours submitted. The burden now shifts to defendant to negate the evidence provided by claimants.

In order to negate claimants' evidence based upon the schedules, defendant submitted spreadsheets that contained data of the sleep studies performed by the claimants. Defendant extracted this information from the machines used to perform the studies. Based upon this data, defendant created a new estimate of overtime due to the claimants. Defendant's data, however, is critically flawed. The data only represents the amount of time that the patients were hooked up

to the machines.  Claimants were required to pick up equipment at defendant's office, travel to the facility by seven o'clock in the evening and begin the study by eleven o'clock.  Claimants were also required to wake the patient in the morning, clean the equipment, leave the facility when the patient was ready, return to defendant's office and download the data.  By the court's calculations, the time required before and after the study, excluding travel time, could, and often did, extend up to six hours.  Defendant, however, in its calculations, only allowed three additional hours for these activities.  The court finds that defendant's calculations do not supply the court with the "precise amount of work performed" nor do they negate the reasonableness of the claimants' evidence.  Metzler, 127 F.3d at 965-66.

Defendant also asserts that claimants' evidence is unreasonable since it includes travel time.  Under the FLSA, time spent "traveling to and from the actual place of performance of the principal activity" of an employee and time spent in "activities which are preliminary or postliminary" to the principal activity is excluded from overtime calculations. 29 U.S.C. § 254(a).  In order to determine whether the travel time is included in the calculations, "it must be considered an integral and indispensable part of their principal activities." Crenshaw v. Quarles Drilling Corp., 798 F.2d 1345, 1350 (10th Cir. 1986).  In both Crenshaw and A & S Oil Well Servicing, Inc. v. Mitchell, 262 F.2d 552 (10th Cir. 1958), the Tenth Circuit determined that the travel time was an integral and indispensable part of the employees' principal activities.  In each case, the employees were required to transport equipment to the oil wells.  The employer argued

that the travel to the oil wells was not includable in the overtime compensation. The circuit held in <u>Mitchell</u>, however, that "employees who transport equipment without which well servicing could not be done, are performing an activity which is so closely related to the work which they and the other employees perform, that it must be considered an integral and indispensable part of their principal activities." 262 F.2d at 256. The court then adopted this holding and applied it to the facts in <u>Crenshaw</u>. The only notable difference in <u>Crenshaw</u> was that the defendant provided the employee with a vehicle. Regardless of this fact, the circuit affirmed the decision of the district court to include travel time in the overtime calculations since the employee was traveling in the vehicle that contained the tools to perform his work. <u>Crenshaw</u>, 798 F.2d at 1350.

In this case, the claimants were required to transport the machines to all facilities, with the exception of the local VA Hospital. Moreover, claimants were required to punch in on the time clock at least thirty minutes before the specified departure time for the designated facility and did not clock out until after the claimants had downloaded the information from the machine in the morning. The machines transported by claimants were indispensable in performing their jobs. The court finds, based on the holdings in <u>Crenshaw</u> and <u>Mitchell</u>, that the travel was an integral and indispensable part of performing their job. Accordingly, the travel time was properly included in claimants' calculations.

The court makes the following findings as to each claim for overtime:

<u>Krista Attar</u>

Attar is eligible to receive overtime for her hours worked in excess of forty hours from the period of July 1, 2002, until the time she filed her consent on July 1, 2005. Attar has presented evidence that she worked 4301.25 hours of overtime. However, 435 of those hours are barred by the statute of limitations. Accordingly, the court finds that defendant is liable to Attar for 3866.25 hours of overtime at the agreed upon rate of $5.50 for a total of $21,264.38.

Kenny Claar

Claar is eligible to receive overtime for his hours worked in excess of forty hours from the period of November 29, 2001, until November 29, 2004. Claar has presented evidence that he worked 1696.5 hours of overtime. However, 578 of those hours are barred by the statute of limitations. Accordingly, the court finds that defendant is liable to Claar for 1118.5 hours of overtime at the agreed upon rate of $5.50 for a total of $6151.75.

Jeff Crown

Crown is eligible to receive overtime for his hours worked in excess of forty hours from the period of November 29, 2001, until November 29, 2004. Crown has presented evidence that he worked 1694.5 hours of overtime. Accordingly, the court finds that defendant is liable to Crown for 1694.5 hours of overtime at the agreed upon rate of $5.50 for a total of $9319.75.

Bryan Dyer

Dyer is eligible to receive overtime for his hours worked in excess of forty hours from the period of July 15, 2002, until July 15, 2005. Dyer has presented evidence that he worked 1754.25 hours of overtime. Accordingly, the court finds that defendant is liable to

Dyer for 1754.25 hours of overtime at the agreed upon rate of $5.50 for a total of $9648.38.

Dawn Hosmer

Hosmer is eligible to receive overtime for her hours worked in excess of forty hours from the period of June 17, 2002, until the time she filed her consent on June 17, 2005. Hosmer has presented evidence that she worked 1509.25 hours of overtime. However, 1114 of those hours are barred by the statute of limitations. Accordingly, the court finds that defendant is liable to Hosmer for 395.25 hours of overtime at the agreed upon rate of $5.50 for a total of $2173.88.

Jeremiah Johnson

Johnson is eligible to receive overtime for his hours worked in excess of forty hours from the period of December 20, 2001, until December 20, 2004. Johnson has presented evidence that he worked 3954.25 hours of overtime. However, 619 of those hours are barred by the statute of limitations. In addition, the court finds that defendant provided sufficient evidence to negate 404.75 hours of Johnson's calculations. Naipohn testified that those 404.75 hours claimed for work were times when either the schedules indicated that the patient cancelled or that Johnson had requested time off. The court provided an opportunity for Johnson to respond to defendant's evidence. Johnson, however, did not do so. Accordingly, the court finds that defendant is liable to Johnson for 2930.5 hours of overtime at the agreed upon rate of $5.50 for a total of $16,117.75.

Tonya McLaughlin

McLaughlin is eligible to receive overtime for her hours worked in excess of forty hours from the period of August 21, 2001, until the

time she filed her complaint on August 21, 2004. McLaughlin has presented evidence that she worked 2234.25 hours of overtime. However, the court finds that defendant provided sufficient evidence to negate 111.25 hours of McLaughlin's calculations. Naipohn testified that those hours claimed for work were times when no patients were scheduled or when she had requested time off. Accordingly, the court finds that defendant is liable to McLaughlin for 2123 hours of overtime at the agreed upon rate of $5.50 for a total of $11,676.50.

<u>Dwight Pike</u>

Pike is eligible to receive overtime for his hours worked in excess of forty hours from the period of January 6, 2002, until January 6, 2005. Pike has presented evidence that he worked 1506.00 hours of overtime. Accordingly, the court finds that defendant is liable to Pike for 1506.00 hours of overtime at the rate of $5.50 for a total of $8283.00.

<u>Nicholas Rhodes</u>

Rhodes is eligible to receive overtime for his hours worked in excess of forty hours from the period of November 29, 2001, until November 29, 2004. Rhodes has presented evidence that he worked 658.00 hours of overtime. However, 444.50 of those hours are barred by the statute of limitations. Accordingly, the court finds that defendant is liable to Rhodes for 213.5 hours of overtime at the rate of $5.50 for a total of $1174.25.

### C. Liquidated Damages

In addition to actual damages, claimants seek liquidated damages. The FLSA provides that an employer who violates the Act by

failing to pay compensable wages is ordinarily liable for the unpaid wages and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  However, the court may eliminate or reduce the award "only if the employer demonstrates both that he acted in good faith and that he had reasonable grounds for believing that his actions did not violate the Act.  The good faith requirement mandates the employer have an honest intention to ascertain and follow the dictates of the Act.  The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior." Dept. of Labor v. City of Sapulpa, Okl., 30 F.3d 1285, 1289 (10th Cir. 1994)(internal citations omitted).

Naipohn testified that he contacted the Department of Labor (DOL) on two occasions.  Naipohn, however, failed to specifically identify when those calls were made.  Naipohn stated that the first call was placed sometime after Stamp advised him of a potential FLSA violation.  The call was placed to "someone who handles these situations."  Naipohn testified that he told this person that his employees travel across state boundaries and conduct sleep studies.  The court, however, is skeptical of the information that was provided by Naipohn to this person.  Naipohn's testimony excluded crucial facts, such as the amount of time the employee spent working in an average week.  Based on only the information that his employees performed sleep studies across state lines, this person informed Naipohn that he was exempt from paying overtime because of the Motor Carrier Act.  At some later date, Naipohn again placed a call to the DOL and spoke with Linda Gibbons.  Naipohn did not testify as to Gibbons' status with the

DOL. Naipohn also failed to specify the specific details relayed to Gibbons and the date this call was placed. Naipohn claims that these two phone calls, placed at unknown dates and lacking any credible evidence as to what was relayed, demonstrate that he acted in good faith and that he had reasonable grounds to believe that defendant did not violate the FLSA. The court strongly disagrees.

The court finds that defendant has not met its burden. In a case quite factually similar, the Tenth Circuit affirmed the district court's opinion that the defendant had not met its burden in demonstrating good faith. Renfro v. City of Emporia, 948 F.2d 1529 (10th Cir. 1991). In Renfro, the defendant had placed a call to the DOL and spoke to a "Mrs. Spivey." 948 F.2d at 1541. The defendant, however, did not know Mrs. Spivey's position nor what detail he described the employer's on-call policy. Moreover, the defendant did not request a written opinion of the DOL. Id. Similar to Renfro, Naipohn does not know Gibbon's position in the DOL, did not adequately describe an employee's work schedules and failed to request a letter from the DOL. Moreover, Naipohn was repeatedly informed by his attorney, accountants and other employees, that he was in violation of the FLSA. Random calls to the DOL, without any credible verification of the information relayed to the person at DOL, cannot constitute reasonable grounds for a belief by Naipohn that there was no FLSA violation when the defendant had numerous individuals stating otherwise. Naipohn simply chose to ignore the opinions of his staff and was notably frustrated by their numerous attempts to inform him of their concerns regarding overtime pay.

The court finds that defendant has failed to meet its burden that

it acted in good faith and had reasonable grounds for believing that its failure to compensate the claimants was not in violation of the FLSA. Accordingly, claimants are entitled to liquidated damages in an amount equal to their compensatory damages. See 29 U.S.C. § 216(b). Defendant must compensate the claimants for their liquidated damages in the additional amounts as follows:

<u>Krista Attar</u>

    $21,264.38

<u>Kenny Claar</u>

    $6151.75

<u>Jeff Crown</u>

    $9319.75

<u>Bryan Dyer</u>

    $9648.38

<u>Dawn Hosmer</u>

    $2173.88

<u>Jeremiah Johnson</u>

    $16,117.75

<u>Tonya McLaughlin</u>

    $11676.50

<u>Dwight Pike</u>

    $8283.00

<u>Nicholas Rhodes</u>

    $1174.25

**D. Interest and Attorney's Fees**

Claimants also seek an award of interest and attorney's fees. Attorney's fees are recoverable in suits under the FLSA. See 29

U.S.C. § 216(b). Interest, however, is not recoverable for damages obtained under Section 16(b). <u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 715, 65 S.Ct. 895, 906 (1945).

Claimants' counsel must file their attorneys' fees calculations by January 13, 2005. Defendant must file an objection, if any, by January 27, 2005. If an objection is filed, the court will schedule a hearing to determine the reasonable attorney's fees.

## IV. CONCLUSION

The court finds that defendant is liable to the claimants for a total of $85,809.64 in compensatory damages and $85,809.64 in liquidated damages. Defendant is also liable for reasonable attorney's fees. Defendant's liability to each claimant is as follows:

<u>Krista Attar</u>

Defendant is liable to Attar for $42,528.76 in compensatory and liquidated damages.

<u>Kenny Claar</u>

Defendant is liable to Claar for $12,303.50 in compensatory and liquidated damages.

<u>Jeff Crown</u>

Defendant is liable to Crown for $18,639.50 in compensatory and liquidated damages.

<u>Bryan Dyer</u>

Defendant is liable to Dyer for $19,296.76 in compensatory and liquidated damages.

<u>Dawn Hosmer</u>

Defendant is liable to Hosmer for $4347.76 in compensatory and

liquidated damages.

<u>Jeremiah Johnson</u>

Defendant is liable to Johnson for $32,235.50 in compensatory and liquidated damages.

<u>Tonya McLaughlin</u>

Defendant is liable to McLaughlin for $23,353.00 in compensatory and liquidated damages.

<u>Dwight Pike</u>

Defendant is liable to Pike for $16,566.00 in compensatory and liquidated damages.

<u>Nicholas Rhodes</u>

Defendant is liable to Rhodes for $2348.50 in compensatory and liquidated damages.

IT IS SO ORDERED.

Dated this 21st day of December 2005, at Wichita, Kansas.

s/ Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE